Elizabeth M. Cronan
vs.                    Eq.No.7455
Metropolitan Life
Ins. Co.

January 8, 1926

TANNER, P. J.   This is a bill in equity brought by the original beneficiary under an insurance policy issued by the respondent company to secure the proceeds on said policy after death of the insured.

It appears by the allegations of the bill that the complainant paid all the premiums on said policy and also endorsed notes for the insured upon the security of said policy of life insurance; that a short time before the death of the insured he changed the beneficiary under said policy but that the complainant notified the insurance company in writing of her equitable claims to the proceeds of said policy, which notice was repeated after the death of the insured but before the respondent company had paid the amount due on said policy.

The case is heard upon the demurrer of the respondent company to the bill, which demurrer is based chiefly upon the ground that the payment of premiums by the complainant gives her no claim upon the proceeds of said policy.

It is quite true that a mere voluntary payment of assessments by a beneficiary gives said beneficiary no such equity as will estop the insured from changing the beneficiary.

John Hancock Mutual Life Ins. Co. vs. Bedford, 36 R. I. 116.

4th Cooley's Briefs on the law of Insurance, p. 3765.

It is equally true, however, that an insured may for a valuable consideration estop himself from changing his designation of beneficiary although such change is authorized by by-law, and where the insured agrees with the beneficiary that if she should pay all assessments and take care of him, he would not change the beneficiary, he can not change the beneficiary without her consent.

4th Cooley's Briefs on the Law of Insurance, pp. 3764, 3765.

The bill alleges that the payments of the premiums and loans and endorsements were upon the security of the insurance policy. This statement is broad enough to include a contract to such effect on the part of the insured with the original beneficiary. We think it would have been better to have stated distinctly that such action upon the security of the policy was with the consent of the insured.

To this extent only the demurrer is sustained.

For Complainant: James H. Rickard.

For Respondent: Tillinghast & Lynch.

---

Arthur Swedberg
vs.                    No. 56869
Michael W. Read

January 9, 1926

SUMNER, J.  Plaintiff has brought an action in deceit against the defendant. Defendant offered no evidence and the jury brought in a verdict for the plaintiff in the sum of $12,000. Defendant filed his motion for a new trial but at the hearing the only ground urged was that the amount of damages was excessive.

The claim of the plaintiff was in brief: That he owned two skating rinks which he was conducting at Oakland Beach and North Attleboro; that they were heavily mortgaged and in looking for someone to help

finance the undertakings, he met the defendant; that the defendant, as the result of their interviews, finally agreed to take plaintiff into partnership in the real estate business, which he, Read, was conducting, at a salary of $35 a week, and the plaintiff in turn was to take the defendant into partnership in his undertakings; the defendant was also to pay the plaintiff $750 in cash, put $1500 into the business, and generally to finance the concern.

The plaintiff, in pursuance of this agreement, transferred his interest in the two skating rinks to the defendant. The defendant advanced him the sum of $546, refused to do anything more for him, and retained possession of the skating rinks. The skating rink at North Attleboro was shortly afterwards sold out under an attachment and the net proceeds, after the satisfaction of the mortgages and attachments, were presumably paid over to the defendant, who has made no accounting for them. The defendant has operated the skating rink at Oakland Beach for his own benefit since March 1923. The plaintiff testified that the cost of the rink at Oakland Beach was $12,000; that he had put in equipment worth $3300, making a total investment of $15,300. The gross income of the skating rink, as appeared by the books of the Oakland Beach Amusement Association, was $10,665 in 1921; $9,949 in 1922, and $8489 in 1923, the year that the defendant took possession. The plaintiff testified that the yearly expenses of running the rink amounted to about $5,267, and this would leave a net income from the rink in 1921 of about $4,678 after deducting the government tax admissions. In 1923 the net income would be approximately $4,000. In 1923 it would be at least $2500, and as much more as defendant's economy of management with a lessened business would add to it.

The defendant's counsel in his argument sought to deduct from the gross income the interest on the two mortgages and payments made on account of the principal of the first mortgage, items which reduced the plaintiff's net income but should not be considered in determining the value of the business.

One Caruolo, former secretary of the Oakland Beach Amusement Association and who had conducted amusement enterprises of various kinds, including skating rinks, estimated the value of the plant at Oakland Beach as a going concern as between $15,000 and $20,000. He added that the defendant did not keep up the rink as he should and pointed out some of his mistakes. The place at Oakland Beach had been running but two years and the depreciation could not have been very great. One Phillips, a deputy inspector of buildings in the city of Providence, testified that the value of the rink in March, 1923, without the equipment was $12,000.

If we accept Caruolo's figures as a basis and fix the value of the Oakland Beach rink at $17,500 and deduct the amount then due on the mortgages, $6,400, we get a balance of $11,100. Adding interest for two and a half years, would bring the amount well above $12,000 after deducting the $546 advanced by Read. Considering that the net income in 1921 and 1922 was over 25% on the original investment, the estimate of Mr. Caruolo does not seem excessive.

It is to be noted that the equipment at North Attleboro did not pass under the attachment sale and that it remained in the hands of the defendant. One Bannon, an employee at the North Attleboro rink, said that he was called upon to fix prices for items in the equipment by Read who sold a portion of it to the purchaser of the building at the attachment sale, and that he saw a check

pass from the purchaser to the defendant. The price obtained at the attachment sale was about $500 over the amount apparently due on the mortgage and the attachments. The defendent did not appear on the stand and has given no explanation or accounting for the various items charged against him.

The court believes that the verdict was warranted by the evidence and the defendant's motion for a new trial is denied.

For Plaintiff: Mendell W. Crane.

For Defendant: McGovern & Slattery.